United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BANK OF NEW YORK MELLON (f/k/a The Bank of New York) and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. (f/k/a The Bank of New York Trust Company, N.A.), as Trustees, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF RICHMOND, et al.,<br><br>Defendants. | No. C 13-03664 CRB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

After the Court dismissed a nearly identical case filed by Wells Fargo, the City of Richmond and its "advisor," a private company named Mortgage Resolution Partners LLC (collectively, "Defendants"), moved to dismiss this action on the same grounds, arguing that the issue is not yet ripe for determination for constitutional and prudential purposes. Here, Bank of New York Mellon and Wilmington Trust Company (collectively, "Plaintiffs") challenge the Court's prior determination regarding ripeness, and argue that this case presents unique issues—particularly related to the effect of its request for declaratory judgment—that the Court has not yet considered. After consideration of the parties' papers and oral argument, the Court GRANTS Defendants' motion to dismiss without prejudice.

## I. BACKGROUND

In the Wells Fargo litigation, the plaintiffs also requested injunctive and declaratory relief. See generally Compl., Wells Fargo Bank, Nat'l Ass'n v. City of Richmond, California, No. 13-3663. The Court granted Defendants' motion to dismiss that suit for lack of subject matter jurisdiction without prejudice because Plaintiffs' claims were not constitutionally or prudentially ripe. See Order Granting Motion to Dismiss, Wells Fargo Bank, Nat'l Ass'n v. City of Richmond, California, No. 13-3663 ("Order") at 1 n.1. Defendants here are considering purchasing underwater mortgages from Richmond homeowners and refinancing the mortgages so that the homeowners would have lower payments and protection from foreclosure. Bank of New York Mellon filed suit as trustee for residential mortgage-backed securitization ("RMBS") trusts that include the Richmond mortgages as issue.

Plaintiffs filed suit for injunctive and declaratory relief, arguing that Defendants' eminent domain plan is both unconstitutional and sufficiently imminent such that the case is ripe for determination. See Second Amended Complaint ("SAC") (dkt. 36) ¶ 17. Defendants moved the Court to dismiss on the same grounds as in Wells Fargo—that the case is not yet ripe for determination. See Mot. Dismiss (dkt. 28) at 1. Plaintiffs argue that the Court should deny this motion, emphasizing that the case is ripe for determination and that the Court has not explicitly ruled on ripeness related to actions for declaratory judgment. See Opposition to Motion to Dismiss ("Opp'n") (dkt. 34) at i.

## II. LEGAL STANDARD

A district court may dismiss a lawsuit for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). District courts should dismiss for lack of subject matter jurisdiction if the case is not yet ripe for determination. Verizon Cal. Inc. v. Peevey, 413 F.3d 1069, 1084 (9th Cir. 2005). The ripeness doctrine is "particularly a question of timing" that is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 1999) (internal citations omitted). A Fifth Amendment takings

2

"claim is premature until it is clear that the Government has both taken property <u>and</u> denied just compensation." <u>Horne v. Dep't of Agric.</u>, 133 S. Ct. 2053, 2062 (2013) (emphasis in original). Ripeness determinations consider constitutional and prudential components. <u>Thomas</u>, 220 F.3d at 1138.

### III. DISCUSSION

#### A. Plaintiffs' Claims Are Not Ripe Under Article III Considerations

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998) (quoting <u>Thomas v. Union Carbide Agric. Prods. Co.</u>, 473 U.S. 568, 580-81 (1985)). Article III of the Constitution requires that there exist a "case or controversy" and that the issues presented must be "definite and concrete, not hypothetical or abstract" for them to become ripe for determination. <u>Thomas</u>, 220 F.3d at 1139 (quoting <u>Ry. Mail Ass'n v. Corsi</u>, 326 U.S. 88, 93 (1945)). "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of irreparable injury." <u>Shell Offshore, Inc. v. Greenpeace, Inc.</u>, 709 F.3d 1281, 1286 (9th Cir. 2013) (quoting <u>Cole v. Oroville Union High Sch. Dist.</u>, 228 F.3d 1092, 1100 (9th Cir. 2000)).

Plaintiffs argue that this case is ripe for Article III purposes because it involves "an active controversy" caused by Defendants' "active threat of an unconstitutional exercise of the City's eminent domain power." Opp'n at 4. Specifically, Plaintiffs contend that passage of the eminent domain program is a foregone conclusion such that the city council's required vote is a mere formality. <u>Id.</u> at 4-6. Additionally, Plaintiffs argue that the threat of eminent domain constitutes a significant economic hardship to the Bank and its investors. <u>Id.</u> at 13. Defendants raise a number of contingencies to support their claim that the case is not yet ripe, including the need to approve the program by a supermajority of the city council, the requirement of notice and a public hearing, and doubt as to the specific property to be seized. Mot. at 3.

Defendants argue that Plaintiffs' contention that Defendants <u>appear</u> ready to proceed with the eminent domain program is not sufficient to establish ripeness. Mot. at 6-8. Indeed, the Supreme Court has held that cases are ripe for review following final agency decisions, but that they are not ripe when plaintiffs' stated harm depends on acts that have not yet occurred. <u>Compare</u> <u>Horne</u>, 131 S. Ct. at 2061-62 (holding that issue was ripe for determination because "petitioners were subject to a final agency order imposing concrete fines and penalties at the time they sought judicial review"), <u>with</u> <u>Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 186 (1985) (finding that plaintiff's claim was not ripe for determination because "respondent has not yet obtained a final decision regarding the application of the zoning ordinance"). Although the potential eminent domain program in question could raise significant constitutional questions that would directly impact Plaintiffs, those questions are not ripe until the facts at issue are developed; i.e., until the City passes its eminent domain plan by a supermajority vote.

Plaintiffs contend, however, that this case is distinct from <u>Wells Fargo</u> because the Court there never ruled on ripeness related to Plaintiffs' request for declaratory judgment, and the parties never briefed this issue. Opp'n at i. Specifically, Plaintiffs argue that declaratory judgment actions require a relaxed standard: that the issues must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u> at 4 (quoting <u>In re Coleman</u>, 560 F.3d 1000, 1004 (9th Cir. 2009)). This argument is not persuasive because declaratory relief triggers the same Article III analysis as other types of claims. <u>See, e.g.</u>, <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 126-27 (2007) (In the context of declaratory judgment, the phrase "case of actual controversy" "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."); <u>Gator.com Corp v. L.L. Bean, Inc.</u>, 398 F.3d 1125, 1129 (9th Cir. 2005) ("The limitations that Article III imposes upon federal court jurisdiction are not relaxed in the declaratory judgment context.").

The present case is not, as Plaintiffs assert, similar to a patent case or other civil matter in which parties may seek a court's declaratory judgment once one party has threatened litigation. Many considerations create uncertainty in the legislative process that

4

do not create uncertainty in litigation between private parties. Here, for example, the eminent domain program will never proceed if any three members of the Richmond City Council vote against the plan. Until the panel votes to adopt the plan by a supermajority vote, the litigation is too uncertain to establish an active threat of litigation such that the case is ripe for determination.

Plaintiffs concede that the eminent domain program cannot proceed until the city council approves the plan by a supermajority vote, but argue that "'a single factual contingency' does not render a claim for declaratory judgment 'impermissibly speculative.'" Opp'n at 7 (quoting Coleman, 560 F.3d at 1005). However, approval of the plan is not a "single factual contingency." In Coleman, the factual contingency existed in the context of a guaranteed conflict between parties. 560 F.3d at 1005. The court there held that the single factual contingency—the debtor's discharge of debts—did not preclude ripeness because the parties were inescapably adverse due to "a specific and defined debt." Id. Unlike Coleman, there will be no case or controversy between the parties here if Defendants are unable to pass an eminent domain program by a supermajority vote. Such a vote does not constitute a "single factual contingency" related to a guaranteed controversy, but is instead a necessary contingency to establish a guaranteed controversy.

Plaintiffs argue further that Defendants have overstated the Court's limitations with regard to interfering with the city council's legislative power. Opp'n at 9. Plaintiffs state that, short of an injunction, they only seek a clarification of their rights, and that the Court's declaratory judgment would not prevent the City Council from exercising its legislative power. Id. Defendants counter by emphasizing the strong public policy against allowing federal courts to interfere with the legislative authority of local governments. Reply at 3; see also Flast v. Cohen, 392 U.S. 83, 96 (1968) ("[T]he rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III."); New Orleans Water Works Co. v. City of New Orleans, 164 U.S. 471, 481 (1896) (By interfering with the adoption of local laws, "the courts will pass the line that separates judicial from legislative authority."); Santa Cruz Cnty.

5

Redev. Agency v. Izant, 37 Cal. App. 4th 141, 150 (1995) ("[T]he resolution of necessity is a legislative act . . . and thus great deference must be given to the legislative determination."). Supreme Court precedent provides that challenges to a city's legislative acts become ripe "when the city council shall pass an ordinance that infringes the rights of the plaintiff." New Orleans Water Works Co., 164 U.S. at 482. Until the city passes such an ordinance, the case is not ripe.

The reason for this is clear: to intervene before the Richmond City Council adopts an eminent domain program would stretch the role of the judiciary beyond what is contemplated by Article III and what is reasonable to maintain judicial efficiency. If the courts were expected to intervene in every legislative proposal that had potential constitutional ramifications, their dockets would be filled with prospective litigation. This is exactly the purpose of the ripeness doctrine; where, as here, factual contingencies could arise that would make litigation unnecessary, it is not reasonable to expect the courts to devote their resources to resolve undefined and potentially non-existent constitutional conflicts. See Am.-Arab Anti-Discrimination Comm. v. Thornburgh, 970 F.2d 501, 511 (9th Cir. 1991) (The Court "should not be forced to decide . . . constitutional questions in a vacuum.").

### B. Plaintiffs' Claims Are Not Ripe Under Prudential Considerations

Ripeness also involves a prudential doctrine, under which a court must evaluate (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." Thomas, 220 F.3d at 1141 (internal references omitted).

#### 1. Plaintiffs' Claim Is Not Fit For Determination

An issue is fit for judicial review when it "can be decided without considering contingent future events that may or may not occur as anticipated, or indeed may not occur at all." Addington v. U.S. Airline Pilots Ass'n, 606 F.3d 1174, 1179 (9th Cir. 2010) (internal quotation marks omitted); see Oklevueha Native Am. Church of Haw., Inc. v. Holder, 676 F.3d 829, 838 (9th Cir. 2012) (Fitness for review requires "the existence of a concrete factual situation."). The Ninth Circuit has consistently held that a case is not fit for review if factual components depend on pending determinations by public or private entities. See, e.g.,

6

Addington, 606 F.3d at 1179-80 (holding that the case was not fit for determination when the Union's seniority proposal had not yet been adopted); US W. Commc'ns v. MFS Intelenet, Inc., 193 F.3d 1112, 1118 (9th Cir. 1999) (finding the legality of interim rates not fit for determination because "the Commission may not have reached a final decision on the rates").

Plaintiffs argue that, although the Richmond City Council has not yet adopted its eminent domain proposal, the plan is fit for determination because the City has issued a "concrete threat" in the form of letters to homeowners, the Mayor is fully supportive of the plan, MRP has already raised $46 million in private financing, and, on September 10, 2013, a supermajority of the council "decided not to withdraw its offers or its open threats." Opp'n at i-ii. At the oral argument on this motion, Defendants emphasized that adoption of a plan would require specific findings of public necessity, advance notice to property owners, a public hearing, and a supermajority vote by the city council.

Plaintiffs also asserted during oral argument that although the city counsel has not yet approved the plan, the City Manager's letter to homeowners itself creates an injury, which makes the issue presently fit for determination. In said letter, dated July 31, 2013, the Richmond City Manager stated the City's intent to purchase loans for the fair market value determined by an appraisal. See SAC Ex. F (dkt. 36-6) at 2. The letter adds that if negotiations as to just compensation fail, the City could "proceed with the acquisition of the Loans through eminent domain." Id. at 3. A brochure attached to this letter states that "the decision to acquire private property for a public project is made by the City of Richmond only after a thorough review of the project, which often includes public hearings." Id. at 4. The brochure lists the procedures that would occur if the City decided to exercise its eminent domain power:

> If the City of Richmond proceeds with eminent domain, the first step is for City of Richmond staff to request authority from the City Council to file a condemnation action. The approval from the City Council is called a "Resolution of Necessity." In considering whether condemnation is necessary, the City Council must determine whether the public interest and necessity require the project, whether the project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury, and whether your property is necessary for the project. You will be given notice and an opportunity to appear before the City Council when it considers whether to adopt the Resolution of Necessity.

7

Id. at 8. Plaintiffs argue that the letter itself created actual harm and established a dispute between the parties. While there is little doubt that there is a present dispute, however, not all disputes are ripe for determination.[1]

Here, for example, the letter is neither sufficiently certain nor sufficiently imminent to satisfy the ripeness doctrine. First, the letter explicitly states that the power of eminent domain has not yet been authorized and that such authorization would require action from the City Council. Second, the letter and brochure also state that a public hearing and notice would be required before the City Council could approve or reject any plan to exercise its power of eminent domain. Without more, a letter detailing the events that would occur if the City chose to adopt an eminent domain proposal is not an active threat such that this issue is imminent and fit for determination. See Coleman, 560 F.3d at 1005 ("Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy.") (internal quotation marks and citation omitted); Thomas, 220 F.3d at 1141 (claim not ripe for review where "any threat of enforcement or prosecution against [plaintiffs] in this case—though theoretically possible—is not reasonable or imminent . . . [and t]he asserted threat is wholly contingent upon the occurrence of unforeseeable events.").

This case is not fit for review because the existence of a controversy depends on a factual scenario that might never materialize.

### 2. Plaintiffs Face No Imminent, Irreparable Harm Absent An Injunction Or Declaratory Relief

For the purpose of prudential considerations, hardship "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." Natural Res. Def. Council v. Abraham, 388 F.3d 701, 706 (9th Cir. 2004). The "absence of any real or imminent threat of enforcement, . . . seriously undermines any claim of hardship." Thomas, 220 F.3d at 1142. Thus, hardship requires either that the underlying act will certainly occur and cause legal or

---

[1] Similarly, even if the letter is an "offer of compromise," that would be evidence of a dispute, but it is not dispositive of the issue of ripeness.

United States District Court
For the Northern District of California

1  economic damage to the plaintiff, or that the threat of the action is actually imminent and
2  would cause irreparable harm unless stopped.

3      Plaintiffs argue that if the Court does not grant injunctive or declaratory relief, they
4  will face irreparable harm. Opp'n at 13. Specifically, Plaintiffs note that the opportunity for
5  declaratory relief might be lost once the City passes a resolution of necessity because the city
6  would likely proceed immediately with condemnation proceedings. Id. If the program goes
7  forward, Plaintiffs state that its RMBS trusts could lose more than $90 million due to
8  Defendants' "first wave" of loan seizures. SAC at ¶ 60. Defendants counter that the Court
9  would still have an opportunity to respond if a supermajority of the city council voted to
10 approve the eminent domain program because implementation would require advance notice
11 and a public hearing. Reply at 10.

12     As part of its claim of hardship, Plaintiffs assert that dismissal of the claim for
13 injunctive or declaratory relief "would leave the Trustees without any guidance as to whether
14 the City's threats are real" and that, with passage of a resolution of necessity, "the chance for
15 declaratory relief may well be irretrievably lost." Opp'n at 13. These arguments undermine
16 Plaintiffs' prudential claims because hardship requires both an imminent threat of
17 enforcement and an actual danger of harm. Thomas, 220 F.3d at 1142. Plaintiffs' stated lack
18 of clarity regarding each of these elements indicates that their claim is not prudentially ripe.

19     Defendants argue that, due to Plaintiffs' ability to bring suit later if the city council
20 approves the plan, the real hardship Plaintiffs assert is that "the federal court might abstain in
21 deference to state court proceedings." Reply at 10. Even if this were the case, being forced
22 to litigate in state court is not hardship because state courts are presumed to protect federal
23 constitutional rights. See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457
24 U.S. 423, 431 (1982) ("Minimal respect for the state process, of course, precludes any
25 presumption that the state courts will not safeguard federal constitutional rights."); M&A
26 Gabaee v. Comm. Redev. Agency of City of L.A., 419 F.3d 1036, 1039 n.2 (9th Cir. 2005)
27 (Plaintiff will benefit from federal protections in state court because "California law permits
28 [plaintiff] to challenge the taking based not only on California state standards, but also on

9

'[a]ny other ground provided by law.'"). Because Plaintiffs have not demonstrated that delaying determination on this issue until it becomes ripe would cause irreparable hardship, Plaintiffs' claims are not prudentially ripe for consideration.

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss without prejudice.

**IT IS SO ORDERED.**

Dated: November 6, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE